# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

In re:                                                    CASE NO. 10-21343-BKC-PGH
                                                          Chapter 7

NOVAVISION, INC.

    Debtor.

_____/

## TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF AN ORDER:

**A. AUTHORIZING THE SALE OF ASSETS BY DEBTOR FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363;**

**B. APPROVING ASSET PURCHASE AGREEMENT;**

**C. APPROVING SALE;**

**D. ESTABLISHING SALE PROCESS;**

**E. APPROVING DISTRIBUTION OF SALE PROCEEDS; AND**

**F. GRANTING RELATED RELIEF**

### Statement pursuant to Local Rule 9075-1

### REASON FOR THE EXIGENCY

    The Debtor was in the business of developing medical devices to treat loss of vision and other abnormal eye conditions and diseases of the eye. The Debtor's personal property consists of intellectual property, office equipment, furnishings and supplies, and machinery, fixtures, equipment and supplies used in businesses. The Trustee is herein asking the Court to approve a Asset Purchase Agreement for the acquisition of the assets of NovaVision, Inc. Said Asset Purchase Agreement requires a closing to occur one business day after the Court approves the sale, but not later than December 8, 2010, or the prospective purchaser's obligations thereunder will cease. <u>The Trustee accordingly asks the Court to set this matter for a hearing the week of November 22, 2010.</u>

Michael R. Bakst (the "Trustee"), as Trustee in Bankruptcy for NovaVision, Inc. ("Debtor"),

RM:7693916:2

through undersigned counsel, pursuant to 11 U.S.C. §§ 105 and 363, Fed. R. Bank. P. 2002, 6004, and 9014 and Local Rule 2002-1, moves the Court ("Motion") for entry of an order granting the relief described in the title of this Motion. In support of the Motion, Debtor states as follows:

## I. INTRODUCTION

In order to maximize the value of its assets for its estate and its creditors, the Trustee intends to sell the assets of the Debtor. The Trustee proposes to enter into an Asset Purchase Agreement for the acquisition of the assets of the Debtor with Vycor Medical, Inc., pursuant to which Vycor Medical, Inc. or its permitted assignee ("Vycor") has agreed to purchase the assets of the Debtor for $900,000, in accordance with the sales process described below.  The sale will be "as-is," "where is," without any warranties of any kind, free and clear of all liens, claims and encumbrances.

## II. JURISDICTION, VENUE, AND STATUTORY AND PROCEDURAL BASIS

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the requested relief are sections 105(a), 363(b) and (f) of the Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* ("Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.") and Local Rules 2002-1 and 9014-1.

## III. BACKGROUND

2.      This voluntary Chapter 7 bankruptcy proceeding was filed on April 28, 2010. Michael R. Bakst has been appointed as the Chapter 7 Trustee.

3.      The Debtor was in the business of developing medical devices to treat loss of vision and other abnormal eye conditions and diseases of the eye.  Most of the Debtor's assets are highly

2

specialized and would be of little or no value to the general public. The Debtor's personal property consists of intellectual property, office equipment, furnishings and supplies, and machinery, fixtures, equipment and supplies used in businesses. In particular, certain intellectual property rights of the Debtor will expire or deadlines will be missed unless immediate action is taken to protect them.

4.      The Debtor's largest secured creditors are Oxford Finance Corporation ("Oxford") and ATEL Ventures, Inc. ("ATEL") (collectively, the "Secured Creditors"). The Secured Creditors are owed approximately $3,500,000 by the Debtor, which they believe to be far in excess of the value of the assets of the Debtor. The Secured Creditors assert that they have a prior perfected security interest in substantially all of the assets of the Debtor. No one has filed a claim challenging said security interest.

5.      Several months ago, at the suggestion of Oxford, the Trustee retained a disinterested third party, The Magnum Group, Inc. ("Magnum"), to market the personal property of the Debtor for sale. Magnum specializes in facilitating acquisition and financing agreements, strategic alliances, joint venture, licensing and distribution contracts in the ophthalmology industry.

6.      Through Magnum, the Trustee has solicited offers to sell the Debtor's assets and has received a few informal and non-specific offers concerning all or some portion of the Debtor's assets. Magnum has had discussions with several groups, but those discussions have not resulted in an offer for anything remotely approaching what the Trustee believes is the value of the assets of the estate. In addition, almost all of those offers required a lengthy "pay-out."

7.      Magnum initiated contact with Fountainhead Capital Management Limited ("Fountainhead"), and on April 14, 2010, Fountainhead and the Trustee entered into a term sheet (the "Term Sheet") pursuant to which Fountainhead or its designee agreed to purchase the assets of

3

the Debtor for $1,575,000, subject to entering into a definitive asset purchase agreement and the approval of this Court. The Court approved the Term Sheet by its Order entered October 28, 2010.

8.      Fountainhead designated Vycor as its designee to acquire the Debtor's Assets pursuant to the Term Sheet. While in the process of undertaking its due diligence of the assets of the Debtor, Vycor reconsidered its opinion of the value of those assets and reduced its offer to $900,000.

9.      In consultation with Magnum and Oxford, the Trustee determined that it was in the best interest of the estate to sell for this reduced purchase price. Therefore, the Trustee and Vycor have entered into an Asset Purchase Agreement dated as of November 5, 2010 (the "Asset Purchase Agreement"), pursuant to which Vycor has agreed to purchase substantially all of the assets of the Debtor (the "Assets") for $900,000, as more particularly set forth in the Asset Purchase Agreement. A true copy of the Asset Purchase Agreement is attached as Exhibit "A" hereto. The Asset Purchase Agreement also includes a plan of action on maintenance and prosecution of pending and issued patents to preserve the value and utility of said patents until the closing date. The Asset Purchase Agreement is subject to the approval of this Court. The Asset Purchase Agreement acknowledges receipt of $77,500 previously received by the Trustee, provides for a down payment of $622,500 which the Trustee has received, and a final payment of $200,000 due on November 16, 2010. The Asset Purchase Agreement provides that the closing shall occur one business day after the sale and the Asset Purchase Agreement are approved by the Court, but not later than December 8, 2010. The Trustee believes that approval of the sale and Asset Purchase Agreement by the Court must occur as soon as possible, but in no event later than November [19], 2010, in order to ensure that the transaction closes by December 8, 2010 and to preserve the value and utility of the aforesaid patents. Pursuant to the Asset Purchase Agreement, the Debtor is required to expend certain funds in order to

4

maintain the status quo pending the closing date.  By approving the sale and closing the transaction as soon as practicable, the estate will save additional carrying costs.

10.     The Trustee believes that selling the assets of the estate to Vycor pursuant to the Asset Purchase Agreement will result in the highest and best value for the sale of such assets and is in the best interest of the estate.  Therefore, the Trustee wishes the Court to approve the Asset Purchase Agreement. In addition, the Secured Creditors have approved the Asset Purchase Agreement and recommend that the Trustee enter into the Asset Purchase Agreement.

11.     In light of these events, Debtor desires to sell the assets of the estate to Vycor pursuant to Bankruptcy Code § 363 because he believes this sale in the best interest of its estate and its creditors.

### IV.  PROPOSED SALE TRANSACTION AND SALE PROCESS

**A.     Sale Transaction**

12.     The Debtor intends to sell the Assets to Vycor pursuant to the Asset Purchase Agreement, and consistent with: (i) the due process requirements of Bankruptcy Code and Fed. R. Bankr. P.; and (ii) the Asset Purchase Agreement.  The Asset Purchase Agreement provides, *inter alia*, for the following:1

Seller:  Debtor.

Buyer:  Vycor Medical, Inc., or its assignee.

Property:  Substantially all of the assets of the Debtor.

Purchase Price:  The Purchase Price for the Property shall be $900,000.

Deposit and Down Payments:  The Trustee received $77,500 toward the Purchase Price in

5

accordance with the Term Sheet previously approved by the Court, and has also received the $622,500 down payment required by the Asset Purchase Agreement. The Asset Purchase Agreement provides for payment of the balance of $200,000 on or before November 16, 2010. All deposits shall be tendered in cash or cash equivalents and held by the Trustee, except as may be expressly provided otherwise in the Asset Purchase Agreement.

Free and Clear: The Trustee will transfer the Assets to the ultimate buyer free and clear of all liens, claims, liabilities, encumbrances, and other interests, which shall attach to the proceeds pursuant to Bankruptcy Code § 363.

Closing: The Closing of this transaction the closing shall occur one business day after the sale and the Asset Purchase Agreement are approved by the Court, but not later than December 8, 2010.

**B.      Sale Process**

13.      The Trustee seeks to dispense with competitive bidding and seeks the Court's approval to sell the Assets to Vycor at private sale, as follows:

(a)      The Trustee previously received $77,500 in accordance with the Term Sheet, and an additional $622,500 down payment pursuant to the Asset Purchase Agreement.

(b)      Pursuant to the Asset Purchase Agreement, Vycor will pay the Trustee an additional $200,000 on November 16, 2010.

(c)      The Asset Purchase Agreement includes a plan of action on maintenance and prosecution of pending and issued patents until the closing date. That plan will guide the parties with the goal of protecting and preserving the intellectual property and

---

1      The above terms are merely set forth for convenience. The Asset Purchase Agreement should be consulted for the actual terms of the sale.

6

other assets of the Debtor between the date of the Asset Purchase Agreement and the closing date.

(d)    The parties herein  seek the Court's approval of the sale and of Asset Purchase Agreement in time to allow the closing to take place no later than December 8, 2010. The Trustee expects to be able to meet his burden to confirm the sale by demonstrating that sale efforts have been appropriately conducted for the Assets no later than the hearing seeking said approval.

**C.    The Closing**

14.    Pursuant to Fed. R. Bankr. P. 6004(a), notice of the proposed sale of the assets outside the ordinary course of business is to be provided in accordance with Fed. R. Bankr. P. 2002(a)(2), (c)(1), and (k).  These provisions of Fed. R. Bankr. P. provide that all creditors are to receive at least 21 days' notice of the sale of estate assets outside the ordinary course of business, unless the Court, for cause, shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Fed. R. Bankr. P. 2002(c)(1) provides that the notice of the proposed sale of assets is to include a general description of the assets, the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections.

15.    The Asset Purchase Agreement contains the terms of the sale of the Assets of the Debtor.  Vycor's obligation to purchase the Assets and to close terminates if Court approval is not received by December 7, 2010.  However, that is an "outside date," and it would be desirable to have more than one business day from the date the Court approves the sale and the Asset Purchase Agreement to close the transaction.   Therefore, there is good cause for shortening the standard 21 day notice period and holding a hearing to consider this Motion at the earliest possible date.

7

16.    The Trustee submits that based on the significant negotiation efforts expended by the parties with respect to the Assets prior to filing this Motion, that the form and manner of notices proposed herein will give parties in interest adequate notice of the Sale and an opportunity to object to the terms of the Sale.

17.    At the closing, Vycor will pay the Trustee the balance of the purchase price, and the Trustee will convey the assets to Vycor by appropriate instruments of conveyance.

18.    The Trustee will serve copies of the order together with the notice of proposed sale in accordance with B.R. 6004, 2002(a)(2), and 2002(c)(1).

## V.  AUTHORITY AND RELIEF

### A.    The Bankruptcy Code permits the Trustee to sell the assets of the estate outside the ordinary course of business.

19.    Property of the estate may be sold outside the ordinary course of business. Bankruptcy Code § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A trustee may sell substantially all of its assets prior to proposal of a plan of reorganization. *In re Parkstone Med. Info. Sys.*, 2001 WL 36189822 at *1 (Bankr. S.D. Fla. Oct. 16, 2001). Courts have held that transactions should be approved under Bankruptcy Code § 363(b)(1) when: (a) they are supported by the sound business judgment of the trustee; (b) interested parties are provided with adequate and reasonable notice; (c) the sale price is fair and reasonable; and (d) the buyer is acting in good faith. *See, e.g., Meyers v. Martin (In re Martin)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Abbott Dairies of Penn, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983); *In re Delaware & Hudson Ry. Co.*,

8

124 B.R. 169 (D. Del. 1991); *In re Phoenix Steel Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009); *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009). Here, each of these factors is met.

20.    Subject to the terms and conditions of the Asset Purchase Agreement, the Trustee, in the sound exercise of his business judgment, has concluded that the sale of the Assets to Vycor presents the best option for maximizing the value of the Debtor's estate. Accordingly, the Trustee respectfully submits that ample business justification exists for the sale of the Assets.

### B.    The sale will be free and clear of liens, claims, and encumbrances.

21.    Pursuant to Bankruptcy Code § 363(f), Debtor will sell the Assets free and clear of all liens, claims, liabilities, encumbrances and other interests. All such liens will attach to the proceeds of the sale. This Court has the statutory authority to authorize the sale free and clear of liens. Pursuant to Bankruptcy Code § 363(f), a trustee may sell all or any part of property of the estate, free and clear of any and all liens, claims, liabilities, encumbrances, or other interests if:

(i)    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(ii)   each entity holding a lien, claim or interest consents;

(iii)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv)   such interest is a bona fide dispute, or

(v)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); *In re Smart World Tech., LLC*, 423 B.R. 166, 169 n. 3 (2d Cir. 2005); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (determining Bankruptcy Code § 363(f) is written in the disjunctive; the court may approve a sale "free and clear" provided at least one of the subsections is

9

met).  Oxford, the secured creditor, which claims a valid and perfected security interest against substantially all of the assets of the Debtor, has approved the Asset Purchase Agreement.

22.     To the extent there are any, the Trustee is selling the Assets free and clear of all successor liability claims, in addition to liens, claims, and encumbrances.  *See, e.g., In re Trans World Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003); *In re Chrysler, LLC*, 576 F.3d 108, 126 (2d Cir. 2009); *American Living Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.)*, 56 B.R. 186, 189-90 (Bankr. N.D. Ga. 1986), *aff'd*, 805 F.2d 1515 (11th Cir. 1986).

**C.      The Property will be sold in good faith.**

23.     Bankruptcy Code § 363(m) provides that reversal or modification on appeal of a transaction authorized under Bankruptcy Code § 363(b) does not affect the validity of the sale to an entity that acquired the property in good faith. *See* 11 U.S.C. § 363(m); *In re Stadium Man. Corp.*, 895 F.2d 845 (1st Cir. 1990); *In re Adamson Co.*, 159 F.3d 896 (4th Cir. 1998).

24.     Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between buyers and some offerors, or an attempt to take grossly unfair advantage of other offerors. *In re Abbott Dairies of Penn, Inc.*, 788 F.2d at 147; *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997).

25.     The Trustee negotiated the Asset Purchase Agreement with Vycor at arms' length and in good faith. Vycor  is not affiliated with, or owned in whole or in part by anyone associated with the Debtor.  The only other written offers for the Assets were for amounts  that are in the Trustee's opinion, either far less than the value of the Assets and/or involved payouts over a long period of time. The Trustee thinks the proposed sale to Vycor is in the best interests of all of the creditors and the estate.  Accordingly, Debtor requests that the Order approving the sale find that the buyer is a good-faith purchaser entitled to protections of Bankruptcy Code § 363(m).

RM:76939162

**D.      A private sale of the Assets is appropriate and will maximize the value received by the estate.**

26.      While courts generally recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate, there are certain circumstances where, as here the nature of the assets does not lend themselves to an auction or competitive sale.  A substantial amount of due diligence is required for potential purchasers to understand the nature and value of the assets of the estate to them, and that due diligence is best conducted outside the context of an auction or formal bid process.

**E.      Statement Regarding Potential Lienholders and Interest Holders**

27.      The Debtor does not believes that any person other than Oxford holds valid liens against the assets of the estate.

## VI.  DISTRIBUTION OF SALE PROCEEDS.

28.      The Trustee and the Secured Parties entered into that certain *Stipulation Concerning Use of Cash Collateral, Post-Petition Financing, Adequate Protection and Agreement for Liquidation of Certain Assets and Distribution of Sale Proceeds* (the "Original Stipulation").  The Original Stipulation was amended pursuant to that certain *First Amended Stipulation Concerning Use of Cash Collateral, Post-Petition Financing, Adequate Protection and Agreement for Liquidation of Certain Assets and Distribution of Sale Proceeds*, that certain *Second Amended Stipulation Concerning Use of Cash Collateral, Post-Petition Financing, Adequate Protection and Agreement for Liquidation of Certain Assets and Distribution of Sale Proceeds*, and that certain *Third Amended Stipulation Concerning Use of Cash Collateral, Post-Petition Financing, Adequate Protection and Agreement for Liquidation of Certain Assets and Distribution of Sale Proceeds* (the "Stipulation").  The Stipulation provides for the distribution of sale proceeds realized from the sale

RM:7693916:2

of the Debtor's assets in accordance with the provisions set forth therein.  Specifically, Section 8(a)

of the Stipulation provides as follows:

> "a.      Upon a sale or sales of the Assets by the Trustee, the Trustee shall distribute the sale proceeds that would otherwise be payable to Lenders on account of its Claim as follows:
>
> > i.      First, to the Lenders to repay all Post-Petition Advances and all interest accrued thereon;
> >
> > ii.      Second, to pay any success fee due Magnum;
> >
> > iii.      Third, to the Lenders repay any cash Collateral used during the pendency of the case;
> >
> > iv.      Fourth, twenty percent (20%) of the Net Sale Proceeds to the Debtor's estate;
> >
> > v.      Fifth, the remaining eighty percent (80%) of the Net Sale Proceeds to the Agent to be applied to the Claim in accordance with the Loan Documents;
>
> Net Sale Proceeds shall mean any and all proceeds from the Liquidation of any of the Assets less any amounts paid pursuant to paragraph 8(a)(i), (ii) and (iii) hereof."

29.      The Trustee requests the Court authorize him to distribute the proceeds in accordance

with the Stipulation.

## VII.  WAIVER OF THE FOURTEEN (14) DAY STAY.

30.      The Trustee hereby requests that the Court waive the fourteen (14) day stay set forth

in Bankruptcy Rule 6004(h).

WHEREFORE the Trustee respectfully requests the entry of an Order:

A.      Authorizing the Trustee to sell the assets of the estate;

B.      Approving the Asset Purchase Agreement;

C.      Approving the Sale procedures set forth herein;

D.      Shortening the time for the hearing on this Motion, and finding good cause for same;

12

E.     Setting a hearing on this Motion as soon as practicable, but in no event later than November 24, 2010;

F.     Authorizing the Trustee to distribute the proceeds in accordance with the Stipulation;

G.     Waiving the fourteen (14) day stay imposed by FRBP 6004(h); and

H.     Granting such other relief as may be just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by via the attached service list, on this the 11th day of November, 2010.


MICHAEL R. BAKST, TRUSTEE


MICHAEL R. BAKST
PMB 702, 222 Lakeview Avenue
Suite 800
West Palm Beach Florida 33401
Telephone:     (561) 838-4539
Facsimile:      (561) 514-3439


**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case.

- Michael R Bakst     efilemrb@ruden.com; FL65@ecfcbis.com; Efile2557@ruden.com; Efile2556@ruden.com; Efile2554@ruden.com

- Michael R. Bakst     efile2565@ruden.com; efile2558@ruden.com; FL65@ecfcbis.com

13

RM:76939162

- Marc P Barmat    ndixon@furrcohen.com; mbarmat@furrcohen.com

- Heidi A Feinman    Heidi.A.Feinman@usdoj.gov

- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov

- Ivan J Reich    ireich@gray-robinson.com; andrea.brodsky@gray-robinson.com

- Traci H Rollins    trollins@ssd.com; lparsons@ssd.com; dfoley@ssd.com; wpb_dckt@ssd.com

- Kevin J Simard    ksimard@riemerlaw.com

- Stuart F Wilson-Patton    stuart.wilson-patton@ag.tn.gov

- Eric B Zwiebel    ezwiebel@bellsouth.net

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service).

David W Dykhouse
1133 Avenue of the Americas
New York, NY 10036

David Scarborough
2963 Oakland Avenue
South Lake Tahoe, CA 96150

John Henderson, Esq. General Counsel
Oxford Finance Corporation
133 North Fairfax Street
Alexandria, VA 22314

All Matrix Creditors

RM:7693916:2

Label Matrix for local noticing
113C-9
Case 10-21343-PGH
Southern District of Florida
West Palm Beach
Wed Nov 10 17:06:38 EST 2010

NovaVision, Inc.
3651 FAU Boulevard, Suite 300
Boca Raton, FL 33431-6489

Oxford Finance Corporation
c/o Kevin J. Simard
Riemer & Braunstein LLP
3 Center Plaza
Boston, MA 02108-2090

Susquehanna Commercial Finance, Inc.
Eric B. Zwiebel, P.A.
8751 West Broward Blvd.
Suite 100
Plantation, FL 33324-2630

Tennessee Department of Revenue
c/o Tennessee Attorney General's Of
Bankruptcy Division
P.O. Box 20207
Nashville, TN 37202-4015

A B See Vision Therapy Centers
1466 Kenwood Drive
Menasha, WI 54952-1132

AT&T
PO Box 105262
Atlanta, GA 30348-5262

Adam Gaucher
49 Mayfield Street
Seekonk, MA 02771-4013

Advantech Corporation
38 Tesla
Irvine, CA 92618-4670

Alan Hirschenson
233 S Federal Hwy #521
Boca Raton, FL 33432-4942

Albert Einstein Medical Center
Att: Bonnie
5501 Old York Road
Philadelphia, PA 19141-3018

Alex Ky
69 Carriage Road
Roslyn, NY 11576-3122

Alma Mihalik
56 Chickadee Lane
Greenport, NY 11944-3103

American Express
PO Box 360001
Fort Lauderdale, FL 33336-0001

Angelo Andreacola
39 Daylily Drive
Mount Laurel, NJ 08054-5725

Anil Gulati MD
2425 West 22 Street
Oak Brook, IL 60523-1245

Anthony Kennedy
200 Hamilton Ave
Hasbrouck Heights, NJ 07604-1811

Aqua Springs Water & Coffee
540 NW 77th Street
Boca Raton, FL 33487-1324

Atel 12, LLC
600 California Street, 6th Floor
San Francisco, CA 94108-2733

Atel Growth Capital Fund III
600 California Street, 6th Floor
San Francisco, CA 94108-2733

Atel Growth Capital Fund IV
600 California Street, 6th Floor
San Francisco, CA 94108-2733

Atel Ventures Inc.
600 California Street, 6th Floor
San Francisco, CA 94108-2793

Atlanta Research & Education Foundation
1670 Clairmont Road (151F)
Decatur, GA 30033-4004

Atlantis Air Conditioning Corp.
1124 North 'G' Street
Lake Worth, FL 33460-2166

Avaya Inc
14400 Hertz Quail Spring Pkwy
Oklahoma City, OK 73134-2615

Bank of America Visa
100 N Tryon Street
Charlotte, NC 28202-4000

Barbara Black
89 Old Hancock Road
Antrim, NH 03440-3404

Benjamin Guedry
648 W Wellington Ave, Unit 3
Chicago, IL 60657-9331

Bernard A. Sabel
Blumethalstrasse 2
Berlin Germany 14163

Betty Wells
2367 Lorna Drive
Melbourne, FL 32935-3256

Billy Carl Masters
711 Franklin Lane
Shorewood, IL 60404-9285

Blake Nesmith
17222 58th Street SE
Snohomish, WA 98290-8502

Bob Scher
3720 Eleanor Drive
Mohegan Lake, NY 10547-1024

Boca R&D Project 7, LLC
6801 Payshpere Circle
Chicago, IL 60674-0001

Brad Langston
1027 Pensalvanya Street
Denver, CO 80203-3209

Brian Bajzek
1641 Lois Ann Lane
Naperville, IL 60563-0468

Bromberg & Sunstein LLP
Att: Bruce Sunstein
125 Summer Street
Boston, MA 02110-1618

Bruce Jamieson
PO Box 1091
Wrangell, AK 99929-1091

Bruce Reardanz
1715 Park Haven Drive
Champaign, IL 61820-7151

Bryan Cave LLP
Att Michael B McKinnis
211 N Broadway St 3600
St Louis, MO 63102-2769

Bryan Cave Strategies
Att: Broderick Johnson, President
1155 F Street
Washington, DC 20004-1312

Bryan Cochran
12913 Framingham Ct
Tampa, FL 33626-4467

Budget Dialup, Inc.
12707 High Bluff Drive, Suite 200
San Diego, CA 92130-2037

CDW
Attn: Vida Krug
200 N Milwaukee Ave
Vernon Hills, IL 60061-1577

CDW Direct, LLC
Att: Betsey Anderson
PO Box 75723
Chicago, IL 60675-5723

Cables to Go
3555 Kettering Blvd
Moraine, OH 45439-2014

Carl Rosen MD
542 W 2nd Avenue
Anchorage, AK 99501-2208

Carla Whitley
303 Barony Place Drive
Columbia, SC 29229-9249

Carmen Cortinas
12 Nichols Street
Newark, NJ 07105-1610

Carol Quinn
1101 Ocean Heights Ave
Egg Harbor Township, NJ 08234-5306

Carol Strunk
425 25th Ave
Vero Beach, FL 32962-1382

Cassio De Oliveira
23 Shira Lane
Manalapan, NJ 07726-8802

Catherine Wagenfehr
8122 W Montebello Ave
Glendale, AZ 85303-4504

Cathryn Lakios
21 Waters Edge Lane
Mount Sinai, NY 11766-1217

Cedar Rapids Vision in Motion
3255 Williams Blvd SW
Cedar Rapids, IA 52404-1480

Charles Anderson
1419 Hillcrest Drive
Anchorage, AK 99503-1636

Chicago Growth Partners VIII, LP
Att: A.M. Michocherhomjee
303 West Madison Street Suite 2500
Chicago, IL 60606-3395

Chrystal Stevens
1103 Winding Ridge Lane
Rockwall, TX 75032-7439

Configurations
3916 N 29 Avenue
Hollywood, FL 33020-1010

Connie Broderick
410 Allan King Rd W
Seabeck, WA 98380-9407

Conrad Gosheff
506 Smokerise Blvd
Longwood, FL 32779-3343

Cottage Grove Place
2115 First Avenue SE
Cedar Rapids, IA 52402-6353

Crossbow Equity Partners LP
Att: Ravi Ugale
One North Clematis Street, Suite 150
West Palm Beach, FL 33401-5550

D'Ambrosio Eye Care Inc.
479 Old Union Tpk
Lancaster, MA 01523-3029

Daniel Fischer
15 Greenfield Hill
Sparta, NJ 07871-3568

David Box
5614 Laurium Road
Charlotte, NC 28226-5610

David Scarborough
2963 Oakland Avenue
South Lake Tahoe, CA 96150-7849

David Scott
2742 N Mount Juliet R.
Mount Juliet, TN 37122-8018

David Todd
3001 SW 24th Avenue, Apt 1712
Ocala, FL 34471-7838

David Ulmer MD
7157 Camellia Lane
Sebastopol, CA 95472-2633

Day Eye Center
Att: Jim Day, Jr. OD
2122 Old Montgomery Hwy
Pelham, AL 35124-1138

Dayem Abdeldayem
285 Hampton Green
Staten Island, NY 10312-1741

De Lage Landen Financial Services, Inc.
1111 Old Eagle School Road
Wayne, PA 19087-1453

Dean Mitchell
336 Gemma Circle
Santa Rosa, CA 95404-2732

Dell Financial Services
4307 Collections Center Drive
Chicago, IL 60693-0001

Dell Financial Services
99355 Collections Center Drive
Chicago, IL 60893

Dell Marketing LP
c/o Dell USA LP
Atlanta, GA 30353-4118

Dept of Labor & Industry
Bureau of Blindness & Visual Services
Att: Josh Sleton
1130 12th Avenue
Altoona, PA 16601-3486

Devcon Security Services Corp
701 Park of Commerce Blvd NW
Boca Raton, FL 33487-3602

Development Company
Patterson Beknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6731

Dirk Mueller-Remus
Dessauer Strasse 36
10963 Berlin, Germany

Donald Paul
648 Cedar Street
Neenah, WI 54956-3434

Donald Wilson
Route 1 Box 72
Hammon, OK 73650-9738

Edith Hart
3728 Wembley Lane
Lexington, KY 40515-1273

Eduardo Garcia
901 Ponce De Leon Blvd, Suite 606
Miami, FL 33134-3073

Edwards Angell Palmer & Dodge
One North Clematis Street, Suite 400
West Palm Beach, FL 33401-5517

Edwards Angell Palmer & Dodge LP
2800 Financial Plaza Attn: SMR 24F
Providence, RI 02903

Eileen Shapiro
975 Memorial Drive #804
Cambridge, MA 02138-5755

Evan Stineman
9090 FM 1026
Rockwall, TX 75032

Eye Care Ltd
Att: Andrew Berman, MD
9630 Kenton Avenue
Skokie, IL 60076-1216

FPL
P.O. Box 025576
Miami, FL 33102-5576

FedEx
PO Box 660481
Dallas, TX 75266-0481

FedEx Customer Info Svc
Revenue Recovery
3965 Airways Blvd Module G
3rd Floor
Memphis, TN 38116-5017

Florida Department of Revenue
5050 West Tennessee Street
Tallahassee, FL 32399-0100

Florida Department of Revenue
Post Office Box 6668
Tallahassee, Florida  32314-6668

Franchise Tax Board
Bankruptcy Section MS A340
POB 2952
Sacramento, CA 95812-2952

Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0551

Frank Stockberger
1011 S 750 E
Lafayette, IN 47905-7930

Ft Lauderdale Eye Instititute
7800 W Oakland Park Blvd, Bldg C
Ste 206
Fort Lauderdale, FL 33351-6741

Fu Ai Wong
12 Lorong Nangka
Singapore 425105

G. Timothy Petito OD PA
8695 4th Street N
Saint Petersburg, FL 33702-3103

Gambino Eye Associates, Inc.
Att:  Michael Gambino OD
4150 Belt Line Road
Addison, TX 75001-4354

George Little
6 Davidson Ave
Scarborough
Ontario, M1K1C3

Georgia Dept of Revenue
1800 Century Center Blvd NE
Atlanta, GA 30345-3205

Gerald Harrington
18 Augusta Drive
Oak Island, NC 28465-8334

Google, Inc.
Dept No. 33654
San Francisco, CA 94139-3181

Graham Elliott
4083 Rocky Ford Road
Valdosta, GA 31601-1519

H. H. Wines
924 Starling Lane
Kingsport, TN 37660-1137

Halina Berger
7676 Monarch Court
Delray Beach, FL 33446-3637

Harry Muller
9822 Pokai Way
Diamondhead, MS 39525-4342

Harry R. Jacobson
836 Glen Leven Drive
Nashville, TN 37204-4316

Henrietta Vazquez
80 Rutherford Road
Berkeley Heights, NJ 07922-2046

Herman Hobbs
1513 Truett Street #201
Las Vegas, NV 89128-8081

Hold Thyseen
3701 FAU Blvd, Suite 205
Boca Raton, FL 33431-6491

Howard Stevenson
31 Fayerweather Street
Cambridge, MA 02138-3329

Huntington Rehab Medicine
Att:  Ilin Ohanessians
630 S Raymond Avenue
Pasadena, CA 91105-3278

Indiana Neuro-Ophthalmology
Att:  Scott Sanders
3721 Rome Drive, Suite A
Lafayette, IN 47905-4401

InfoTel Distributors
6910 State Road 36
Fletcher, OH 45326

Infotel Distributors
c/o SYX Services
7795 W Flagler Street, Suite 35
Miami, FL 33144-2367

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 21126
PHILADELPHIA PA 19114-0326

Ivan Huffman
522 Ray Road
Henniker, NH 03242-6169

Jack McGee
122 Robin Drive
Buda, TX 78610-9554

James E. Lang, MD
4800 NE 20th Terrace, Ste 305
Fort Lauderdale, FL 33308-4510

James Gaskins
104 Saxton Ave
PO Box 415
Norway, SC 29113-0415

James Hill
1620 Wells Loop
Jasper, AL 35503-3941

James Pasquarello
6035 S Hwy A1A
Melbourne Beach, FL 32951-3706

Janice Monks
5924 Sarah Drive
Pensacola, FL 32503-7542

Jeff Silver
1592 Dewey Creek
Beaumont, CA 92223-7304

Jeffery Somrock
9232 West Branch Rs
Duluth, MN 55803-9725

Jerry Helms
11901 Albemarle Road
Charlotte, NC 28227-7980

Jill Van Scoyoc
7170 Libby Lane
Chincoteague Island, VA 23336-1558

Jimmie Shelby
97 Feedmill Rd
Soso, MS 39480-5002

John Levy
3380 Patricia Ave
Los Angeles, CA 90064-4837

John Preston
9 Martins Cove Lane
Hingham, MA 02043-1049

Johnson & Johnson Development Corp
Att: Kadir Kadhiresan
410 George Street (GS-1123)
New Brunswick, NJ 08901-2016

Johnson & Johnson Development Corp.
Att: V. Kadir Kadhiresan, PHD
6500 Paseo Padre Pkwy
Fremont, CA 94555-3658

Joseph Jennings
1South Shannon Avenue
Athens, OH 45701

Juan Soberanis
19 Calle 'B' 31-45, zona 7
Villa Linda III
Guatemala City, Guatemala 01007

Kaely Wilson
1194 Paradise Rd
Ferndale, WA 98248-9459

Karen Arnold
2520 Pearl Street
Iron Mountain, MI 49801

Karen Molitierno
1308 Summit Drive
Oakmont, PA 15139-1025

Kate Islas
12983 Caminito Bautizo
San Diego, CA 92130-2473

Kathryn Edwards
955 Homeland Drive
Lancaster, PA 17601-5141

Kathryn Leipold
219 Aberdeen Road
Horseheads, NY 14845-9226

Kauser Sharieff OD
17524 Yorba Linda Blvd
Yorba Linda, CA 92886-3825

Ken Vogel
19 Macon Drive
Trenton, NJ 08619-1409

Kenneth Eller
6335 Mitch Haven Drive
Bethel Park, PA 15102-3135

Kevin Chauvette MD
21 Hemlock Drive
Goffstown, NH 03045-1971

Kirk Ginther
964 Egypt Road
Brockway, PA 15824-3006

Landfall Eye Associates
1135 Military Cutoff Rd, Ste 203
Wilmington, NC 28405-3685

Larry Cochran
10371 North Oracle Road, Suite 106
Tucson, AZ 85737-9393

Laszlo Gathy
1225 NW 50th Street
Deerfield Beach, FL 33442-0911

Law Offices of Ronald W. Lyon, PC
115 S Travis Street
Sherman, TX 75090-5990

Leadingham Eye Care Center
1330 Carter Avenue
Ashland, KY 41101-7544

Lei Li
1880 Dalton Drive
Milpitas, CA 95035-6011

Lewis Gruber
400 E Randolph Apt 3911
Chicago, IL 60601-7343

Liberty IRB, Inc.
2024 Larchmont Drive
Deland, FL 32724-8323

Linda Vechery
10430 Wilshire Blvd, Suite 1506
Los Angeles, CA 90024-4680

Long Island Optometric Vision
Att: Dr. Jennifer Ceonzo OD
265 Post Avenue, Suite 380
Westbury, NY 11590-2234

Louisa Mcegan
275 E Green Street Apt 1633
Pasadena, CA 91101-4420

Lynn Van Rensselaer
7625 SW 161 Terrace
Miami, FL 33157-3851

Marsha Pniewski
659 Spring Road
Elmhurst, IL 60126-4224

Martha Michelle Gaines
6313 US Hwy 79 N
Palestine, TX 75801-2418

Martin Raphael
117 Deerpath
Roslyn Heights, NY 11577-1603

Matthew Bozic
460 Harmony Lane
Campbell, OH 44405-1213

Matthew Lanigan
429 Ben Oaks Dr East
Severna Park, MD 21146-2206

Matthew Margolis
Southern Eye Associates
601 E Matthews
Jonesboro, AR 72401-3100

McAllen-Rutz Eye Clinic
Att: Dr. Duane Rutz
204 S Atlantic Ave
Hallock, MN 56728-4306

McMaster-Carr
PO Box 7690
Chicago, IL 60680-7690

Medical University of South Carolina
Att: Dr. Charles Skipper
171 Ashley Ave
Charleston, SC 29425-8908

Merrimack Vision Care
401 Daniel Webster Hwy
Merrimack, NH 03054-4143

Michael Kaplan
191 Stults Lane
East Brunswick, NJ 08816-5818

Michael Mandese OD
134 Windmere Place
Melbourne Beach, FL 32951-3100

Millie Tuveng
13715 Preston Rd #189
Dallas, TX 75240-3440

Mitchell Saferstein OD
275 Forest Avenue
Paramus, NJ 07652-5428

Mohammad Fouladvand MD
333 E 34th Street, Suite 1F
New York, NY 10016-4977

Navroze Mehta
4140 Georges Way
Boca Raton, FL 33434-5345

New York City Dept of Finance
PO Box 5040
Kingston, NY 12402-5040

Noro Moseley Partners V, LP
Att: Russell R. French
9 North Parkway Square
4200 Northside Parkway, NW
Atlanta, GA 30327-3054

Noro Moseley Partners V-B, LP
Att: Russell R. French
9 North Parkway Square
4200 Northside Parkway, NW
Atlanta, GA 30327-3054

North Carolina Board of Pharmacy
PO Box 4560
Chapel Hill, NC 27515-4560

Oakwood Medical Investors IV (QP), LLC
Att: Raul E. Perez, MD
10411 Clayton Road, Suite 302
Saint Louis, MO 63131-2913

Oakwood Medical Investors IV, LLC
Att: Raul E. Perez, MD
10411 Clayton Road, Suite 302
Saint Louis, MO 63131-2913

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Orli Weisser-Pike
31 Lynnfield Road
Memphis, TN 38120-2305

Oxford Finance Corporation
133 North Fairfax Street
Alexandria, VA 22314-3229

Paetec
One Paetec Plaza
600 WillowBrook Office Park
Fairport, NY 14450-4233

Palm Beach County Tax Collector
P.O. Box 3715
West Palm Beach, FL 33402-3715

Patrick Horan
4940 Sentinel Drive #102
Bethesda, MD 20816-3509

Pauline McAnany
4359 E Barlind Drive
Pittsburgh, PA 15227-1227

Peak 10
PO Box 530619
Atlanta, GA 30353-0619

Pennsylvania Dept of Labor
1171 S Cameron Street, Room 324
Harrisburg, PA 17104-2510

Pennsylvania Dept of Labor & Industry
Bureau of Blindness & Visual Svces
1130 12th Avenue, Suite 300
Altoona, PA 16601-3486

Perry Rosenstein
12 Sinclair Court
Teaneck, NJ 07666-6481

Phillip Dye
11750 SW Blakeney Street
Beaverton, OR 97008-5850

Phillip Vetor
501 S Main Street
Summitville, IN 46070-9744

Pitney Bowes
PO Box 856460
Louisville, KY 40285-6460

Pitney Bowes Global Financial Services
PO Box 909
Shelton, CT 06484-0949

Popular Equipment Finance
15933 Clayton Road, Suite 200
Ballwin, MO 63011-2172

Premiere Global Services
PO Box 404351
Atlanta, GA 30384-4351

Rebecka Mall
16135 210th Street S
Barnesville, MN 56514-9651

Regal Office Services, Inc.
1800 NW Madrid Way
Boca Raton, FL 33432-1733

Registered Agents Legal Srvrs, LLC
1220 N Market Street
Wilmington, DE 19801-2535

Republic Packaging of FL
PO Box 795
Bedford Park, IL 60499-0795

Retina Assoc of Kentucky
120 N Eagle Creek Drive, Ste 500
Lexington, KY 40509-1827

Richard E. Legge, MD, PC
7810 Davenport Street
Omaha, NE 68114-3629

Robert Williamson
8920 Farnam Court
Omaha, NE 68114-4076

Rocky Mountain Eye Center PC
27 Montebello Road
Missoula, MT 59801

Ronald Smalley
111 Pebblestone Way
Elizabethtown, KY 42701-6819

Rosita Elias
767 Springfield Avenue Apt 32
Summit, NJ 07901-2343

Ross Cusic OD
Optical Images Inc.
12011 124th Ave NE
Kirkland, WA 98034-8204

Royal Case
Att:  Justin Gibson
315 S Montgomery
Sherman, TX 75090-7140

Rudy Mazzocchi
c/o Michael W. Droke PC
Dorsey & Whitney LLP
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043

Rummel Eye Care PC
Att:  Dr. Errol Rummell, OD
1022 Willow Creek Rd
Prescott, AZ 86301-1607

SJ Meyer
25 Colum Court
Ramsey, NJ 07446-2002

Sam Sun
2103 Saleroso Drive
Rowland Heights, CA 91748-4183

Sarah Girard
120 Beckstrom Street
Norway, MI 49870-1110

Sarah Gomez
9515 Cache Creek Dr NW
Albuquerque, NM 87114-6104

Sepich Eye Care PC
Att:  Tracy Sepich OD
100 Oakwood Drive, Suite 300
State College, PA 16801-7064

Shane Warner
7529 Wyoming Street
Omaha, NE 68122-1375

South Carolina Dept of Revenue
301 Gervais Street
PO Box 125
Columbia, SC 29214-0001

South Carolina Dept of Revenue
Columbia, SC 29214-0006

Spectrios Institute for Low Vision
Att:  John Coalter OD
219 E Cole Avenue
Wheaton, IL 60187-3107

Sprint
PO Box 4181
Carol Stream, IL 60197-4181

Staples Business Advantage
Dept ATL
Atlanta, GA 30384-5386

State Board of Equalization
Special Operations Branch, MIC:55
POB 942879
Sacramento, CA 94279-0001

State of NJ Traumatic
Division of Disability Svces
Att:  Jose Garcia
PO Box 700
Trenton, NJ 08625-0700

State of New Jersey/Division of Taxation
Revenue Processing Center
Trenton, NJ 08646-0666

Stephen Roepke
2425 Whale Harbor Lane
Fort Lauderdale, FL 33312-4643

Steve DePaul
1501 Thornhill Court
Atlanta, GA 30338-4226

Steven Jusseaume
111 N Shore Rd
Hampton, NH 03842-1462

Steven Siebels
25982 Cty Hwy V
Kendall, WI 54638-7018

Summit Funding Group
PO Box 63-6488
Cincinnati, OH 45263-0001

Summit Vendor Finance
11500 Northlake Drive, Suite 300
Cincinnati, OH 45249-1662

Sunstein Kann Murphy & Timbers LLP
Joel R. Leeman
125 Summer Street
Boston, MA 02110-1618

Susquehanna Commercial Finance, Inc.
1566 Medical Drive, Suite 201
Pottstown, PA 19464-3229

T-Mobile
PO Box 742596
Cincinnati, OH 45274-2596

TCF Equipment Finance
11100 Wayzata Blvd #801
Minnetonka, MN 55305-5517

TCF Equipment Finance
Lockbox #771922
Chicago, IL 60677-1009

TGI
c/o De Lage Landen Financial Svces, Inc.
Lease Processing Center
1111 Old Eagle School Road
Wayne, PA 19087-1453

TGI Office Automation Lease
c/o De Lage Landen Financial Svces, Inc.
Lease Processing Center
1111 Old Eagle School Road
Wayne, PA 19087-1453

Taylor Dunham
18291 CR NS 239
Chattanooga, OK 73528-9137

Techprint Inc.
137 Marston Street
Lawrence, MA 01841-2201

Tennessee Department of Revenue
c/o Attorney General
POB 20207
Nashville, TN 37202-4015

Tennessee Dept of Revenue
Andrew Jackson State Office Bldg.
Nashville, TN 37242-0001

Tim Niekrewsicz
11 Creekside Lane
Pleasant Valley, NY 12569-7539

Tollfreeforwarding.com
5959 W Century Blvd, 11th floor
Los Angeles, CA 90045-6517

Tullis-Dickerson & Co., Inc.
Att: Jim Tullis
One Stamford Place, 12th Floor
263 Tresser Blvd.
Stamford, CT 06901-3236

Tullis-Dickerson Capital Focus III, LP
Att: Jim Tullis
One Stamford Place, 12th Floor
263 Tresser Blvd.
Stamford, CT 06901-3236

U.S. Bank
PO Box 790448
Saint Louis, MO 63179-0448

US Bancorp Business Equipment
Finance Group
1310 Madrid St #100
Marshall MN 56258-4001

US Bank
US Bancorp Business Equip
1310 Madrid Street
Marshall, MN 56258-4099

University of Miami
Att: Maria Nobo, Neurology Dept
1120 NW 14th Street, #1372
Miami, FL 33136-2107

Vaunita Bauer
2509 Abbey Rd
Jonesboro, AR 72401-0593

Vengroff Williams and Associates, Inc.
PO Box 2189
Stanton, CA 90680-1389

Verio
PO Box 650091
Dallas, TX 75265-0091

Verizon
1000 Jeter Avenue
Opelika, AL 36801-3701

Verizon Wireless
1000 Jeter Avenue
Opelika, AL 36801-3701

Victor Broceaux
3500 Mystic Point Drive, Apt 3601
Miami, FL 33180-2586

Viewfinders Low Vision Services
10001 West Bell Road #115
Sun City, AZ 85351-1297

Virgina Worley
650 Phipps Blvd NE Apt 6107
Atlanta, GA 30326-3234

Von Lieres Brachmann Schulze
Grillparzerstrasse 12A
Munchen, Germany 81675

Waiquamdee Narit
1717 Camino De Villas
Burbank, CA 91501-1109

Walter Arnold
1200 Walker Street
Iron Mountain, MI 49801-6602

Warren Wilhelm
38711 Rd 705
Mc Cook, NE 69001-7245

Wayne Baletki
830 Airport Road
Kenora Ontario P9N0A9

West Coast Eye Care
15640 New Hampshire Court
Fort Myers, FL 33908-4168

William Cox
22625 Wood Shadow Lane
Lake Forest, CA 92630-3154

William Foege
10610 SW Cowan Drive NE
Vashon, WA 98070-3054

William Giese
133 Edgewood Road
Ardmore, PA 19003-2507

William Harrison
4920 New Providence Ave
Tampa, FL 33629-4815

William Meyer
2037 Trailcrest Lane #7
Saint Louis, MO 63122-2264

Windstream
Att:  Support Services
PO Box 9001908
Louisville, KY 40290-1908


Wolers Kluwer Pharma Solutions
15896 Collections Center Drive
Chicago, IL 60693-0001

Yeah Wah
3601 Mont Kiara
KL 50480 Malaysia

Yuri Antanovich
2717 N Mildred Ave
Chicago, IL 60614-1417


Zurvahn, LLC
Att:  Gleyd Pastore
6601 Lyons Road Suite 300
Boca Raton, FL 33431

Marc P Barmat
2255 Glades Rd  # 337W
Boca Raton, FL 33431-7379

Michael R Bakst
PMB 702
222 Lakeview Ave #160
West Palm Beach, FL 33401-6101


          The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
          by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Internal Revenue Service
POB 21126
Philadelphia, PA 19114




          The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Boca R & D Project 7, LLC

(u)Johnson & Johnson Development Corporation

(u)West Palm Beach


(u)Abhisek Drolia
54/104 Saryu, Mansarover
Jaipur

(u)Asli Akcura
Konak 15 Hani Kat 3
OH 45020

(u)Charles Seon
PO Box 1083
Val Park


(u)Mountain Top Associates Inc.
Att:  Dr Claus Heuchemer
Kingston Chambers
PO Box 173, Rd Town, Tortola British VI

(d)Popular Equipment Finance, Inc.
15933 Clayton Road, Suite 200
Ballwin, MO 63011-2172

(u)Sonia togonon
342 Ildefonso Street
St Martin
Bacoor Cavite


(d)David Scarborough
2963 Oakland Avenue
South Lake Tahoe, CA 96150-7849

End of Label Matrix
Mailable recipients   278
Bypassed recipients    10
Total                 288

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("Agreement") dated as of the 5th day of November, 2010, is by and between Michael R. Bakst, Chapter 7 Trustee ("Seller") of NovaVision, Inc. ("Debtor"), pursuant to Debtor's bankruptcy case under Chapter 7 of Title 11 of the United States Bankruptcy Code ("Bankruptcy Code"), and Vycor Medical, Inc., a Delaware corporation, or its assignee ("Buyer").

### WITNESSETH:

**WHEREAS,** on April 28, 2010 (the "Petition Date"), Debtor filed its voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court");

**WHEREAS,** before the Petition Date, Debtor was engaged in business researching, developing and providing medical technologies to restore the vision of patients with neurological visual loss ("Business") and was headquartered in Boca Raton, Florida;

**WHEREAS,** Seller desires to sell Debtor's Assets (as hereinafter defined), and Buyer desires to purchase such Assets pursuant to the terms and conditions of this Agreement and pursuant to an order of the Bankruptcy Court approving such sale ("Sale Order"), under Section 363 of the Bankruptcy Code; and

**WHEREAS,** Seller, Fountainhead Capital Management Limited ("Fountainhead"), and Oxford Finance Corporation, as agent for itself and ATEL Ventures, Inc. ("Oxford Finance") executed a Term Sheet dated as of October 14, 2010 (the "Term Sheet") regarding the proposed sale of Debtor's Assets to Fountainhead or its designee and Fountainhead has designated the Buyer as its designee and assignee to the acquire Debtor's Assets and enter into this Agreement;

**NOW THEREFORE,** in consideration of the promises, covenants and other consideration described herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows, intending to be legally bound:

## ARTICLE 1
## TRANSFER OF ASSETS AND PURCHASE PRICE

1.1    Assets. Pursuant to the Sale Order of the Bankruptcy Court approving the same and subject to the terms and conditions of this Agreement, Seller agrees to sell, convey, transfer and deliver to Buyer at Closing (as defined in Section 2.1 of this Agreement) all Seller's right, title and interest, if any, in and to all of the Debtor's assets, including, but not limited to, those set forth on Schedule 1.1 (collectively, the "Assets"), free from all claims, liens, encumbrances, defaults, taxes, debts, and security interests of any kind, except the Assumed Liabilities (as hereinafter defined), but excluding the Excluded Assets (as hereinafter defined). In furtherance, and not in limitation, of the foregoing, Seller shall sell, assign, and transfer to Buyer, or its successor or assignee, all right, title and interest, if any, in and to Debtor's intellectual property throughout the world, including without limitation any and all patents of the United States and foreign countries that may be issued or pending, including but not limited to those patents listed on Schedule 1.1, including any and all continuations, continuations-in-part, divisionals, reissues,



EXHIBIT
"A"

re-examinations, substitutions and extensions thereof, such right, title and interest, if any, including the right, if any, to file applications and obtain patents, utility models, industrial models and designs in the name of Buyer, or its successor or assignee, throughout the world, including all rights of priority, all rights to publish cautionary notices reserving ownership of such intellectual property and all rights to register such intellectual property in appropriate registries.

      1.2    Consideration. In accordance with Section 1.3 hereof, Buyer shall pay to Seller the following consideration for the Assets (the "Purchase Price"):

      (a)    The sum of (i) nine hundred thousand and 0/100 dollars ($900,000), and

      (b)    Buyer's assumption of the Assumed Liabilities pursuant to Section 1.6 of this Agreement.

      1.3    Purchase Price Deposits.

      (a)    Seller hereby acknowledges and agrees that, prior to the date hereof, an amount equal to seventy-seven thousand five hundred dollars ($77,500) has been paid by Buyer (the "Due Diligence/Standstill Fee"), and that such Due Diligence/Standstill Fee has been released from escrow by Seller and distributed as provided in the Term Sheet to Debtor's bankruptcy estate (the "Estate").

      (b)    Within one business day following the execution of this Agreement, Buyer shall deposit into escrow with Seller the sum of six hundred twenty-two thousand five hundred dollars ($622,500) by wire transfer of immediately available funds (the "Down Payment") to an account designated by Seller, which sum shall be released from such escrow in accordance with Section 1.3(d) hereof. Buyer's failure to make such Down Payment in accordance with this Section 1.3(b) shall automatically be deemed a material breach of this Agreement.

      (c)    Upon the earlier of November 16, 2010 or the Closing (as defined in Section 2.1 of this Agreement), Buyer shall pay to Seller two hundred thousand dollars ($200,000) in immediately available funds (the "Final Payment" and, together with the Down Payment, the "Escrow Funds") by wire transfer or certified or cashier's check as specified by Seller in a written instruction delivered to Buyer, which sum shall be released from such escrow in accordance with Section 1.3(d) hereof. Buyer's failure to make such Final Payment in accordance with this Section 1.3(c) shall automatically be deemed a material breach of this Agreement.

      (d)    Seller shall hold the Escrow Funds in escrow and release or otherwise disburse the Escrow Funds only in accordance with this Section 1.3(d). The Escrow Funds shall not constitute the property of Seller, nor shall the Escrow Funds constitute the property of the Estate unless the Escrow Funds are released from escrow to the Estate in accordance with this Section 1.3(d).

      (i)    Seller shall hold and disburse the Escrow Funds received by it pursuant to the terms of this Agreement, as follows:

(A)     At the Closing (as defined in Section 2.1 of this Agreement), Seller shall disburse the Escrow Funds to the Estate;

(B)     If the Bankruptcy Court fails, by December 7, 2010 (or such other date as mutually agreed to in writing by the parties and Oxford Finance), to approve (I) this Agreement and any other definitive agreements which Buyer has requested the bankruptcy court to approve and that are reasonably necessary to transfer the Assets to Buyer on the Closing Date in an exclusive sale process without overbidding (such other definitive agreements, together with this Agreement, collectively the "Definitive Agreements") and (II) the sale of the Assets to Buyer (the "Sale"), then Seller shall release the Escrow Funds to Buyer within two business days thereafter;

(C)     If the Bankruptcy Court approves any offer, other than Buyer's offer, for all or any part of the Assets (a "Competing Offer"), or if Seller materially breaches Section 5.4 (Exclusivity; No Overbidding) of this Agreement; then Seller shall release the Escrow Funds to Buyer within two business days thereafter and the Estate shall repay the Due Diligence/Standstill Fee to Buyer and reimburse Buyer for its costs up to ninety thousand dollars ($90,000) pursuant to Section 5.4;

(D)     If the Closing (as defined in Section 2.1 of this Agreement) does not occur by December 8, 2010 (or such other date as mutually agreed to in writing by the parties and Oxford Finance) as a result of a material breach of any Definitive Agreement by any party thereto other than Buyer, then Seller shall release the Escrow Funds to Buyer within two business days thereafter;

(E)     If the Closing (as defined in Section 2.1 of this Agreement) does not occur by December 8, 2010 (or such other date as mutually agreed to in writing by the parties and Oxford Finance) as a result of a breach of any Definitive Agreement by Buyer, then Seller shall release the Escrow Funds to the Estate within two business days thereafter;

(F)     Upon a material breach of Sections 1.3(b) or 1.3(c) of this Agreement by Buyer, then Seller shall release the Escrow Funds to the Estate within three business days after such material breach;

(G)     Upon mutual written agreement with Buyer, Seller shall release the Escrow Funds in accordance with such agreement, which shall be evidenced by a written instrument; and

(H)     If this Agreement or the Escrow Funds become the subject of litigation, upon written request from Buyer or Seller, Seller shall deposit the Escrow Funds with the clerk of the court in which the litigation is pending, or a court of competent jurisdiction if no litigation is pending,

and thereupon Seller shall be fully relieved and discharged of any further responsibility with regard thereto.

1.4    Allocation of Proceeds. The parties agree that prior to the Closing Date, they or their representatives shall in good faith allocate the Purchase Price among the Assets in accordance with Section 4.2 of this Agreement and to attach such allocation to this Agreement as Schedule 1.4.

1.5    Assignment of Contracts, Permits and Other Assets. Subject to the terms and conditions of this Agreement, as of Closing (as defined in Section 2.1 of this Agreement), Seller shall assign and transfer to Buyer all of Seller's right, title and interest, if any, in and to, and Buyer shall assume all Seller's rights, titles, and interests, if any, and, except as provided hereunder, all Seller's obligations for performance from and after Closing (as defined in Section 2.1 of this Agreement), under, Debtor's contracts, permits and other assets set forth on Schedule 1.5 (the "Assigned Contracts").

1.6    Assumption of Liabilities. As partial consideration for the Assets, Buyer shall assume, perform and discharge, by Bankruptcy Court order, pursuant to Bankruptcy Code Section 365, from and after Closing (as defined in Section 2.1 of this Agreement), the following Seller obligations (the "Assumed Liabilities"):

(a)    All Seller's liabilities under the Assigned Contracts; and

(b)    All Seller's obligations under any Assigned Contract.

1.7    Excluded Liabilities. Except for the Assumed Liabilities, Buyer shall assume no other debts, liabilities, tax obligations (except as set forth in Section 4.1 of this Agreement), or other obligations of Seller. Excluded liabilities expressly include Seller's liabilities on Schedule 1.7 (the "Excluded Liabilities").

1.8    Excluded Assets. Nothing herein contained shall be deemed to sell, transfer, assign or convey the Excluded Assets to Buyer, and Seller shall retain all right, title and interest to, in and under the Excluded Assets. For all purposes of and under this Agreement, the term "Excluded Assets" shall mean:

(a)    cash and cash equivalents or similar type investments, bank accounts, certificates of deposit, treasury bills and other marketable securities, except to the extent that any such assets are derived from the disposition by Seller of Assets after the date hereof;

(b)    all claims and causes of action which the Debtor may have against any third person (other than NovaVision AG (the "German Subsidiary")), and all rights of indemnity, warranty rights, rights of contribution, rights of refunds, rights of reimbursement and other rights of recovery, including rights to insurance proceeds, possessed by the Debtor (except as against the German Subsidiary), in each case not directly related to Assets or with respect to the Excluded Liabilities, and (ii) all claims and causes of action against the Debtor's officers, directors, or other employees (but not the officers, directors or other employees of the German Subsidiary);

4

(c)    any and all rights of Seller under this Agreement;

(d)    any and all avoidance actions or similar causes of action arising under sections 544 through 553 of the Bankruptcy Code, including any proceeds thereof;

(e)    any minute books, stock ledgers, corporate seals and stock certificates of the Debtor and other similar books and records that the Debtor, are required by law to retain, including tax returns, financial statements and corporate or other entity filings; provided, however, that Debtor shall have the right to make and retain copies of all or any portions of such retained books and records;

(f)    any asset of Seller designated by Buyer as an Excluded Asset;

(g)    any Assigned Contract or permit that requires as a matter of law under 11 U.S.C. §365(c) the consent of a third party to be assumed and assigned hereunder as to which, by the Closing Date, such consent has not been obtained;

(h)    any records, documents or other information relating to current or former employees of the Debtor, and any materials containing information about employees, disclosure of which would violate an employee's reasonable expectation of privacy;

(i)    accounts receivable;

(j)    all insurance policies and rights to proceeds thereof, including, without limitation, all rights under director and officer (or similar) insurance policies, maintained by the Debtor; and

(k)    any documents or other materials which are subject to attorney-client or other privilege.

## ARTICLE 2
## CLOSING

2.1    <u>Closing</u>. The transfers and deliveries referred to in Article 1 hereof (the "<u>Closing</u>") shall take place at 2 p.m. on the later of November 16, 2010 or one business day following the date that the Bankruptcy Court provides the approval described in Section 1.3(d)(i)(B); provided, however, in no event later than December 8, 2010, or such other date as is mutually agreed to by the parties hereto (and Oxford Finance) in writing, at the office of Ruden McClosky, 222 Lakeview Avenue, Suite 800, West Palm Beach, Florida 33401, or by such other means, including facsimile, and at such other time and date as such exchange actually occurs (the "<u>Closing Date</u>").

2.2    <u>Conditions to Closing</u>.

(a)    The obligations of Buyer and Seller under this Agreement are subject to the satisfaction or waiver by Buyer or Seller, as applicable, of the following conditions precedent on or before Closing:

(i)    The Bankruptcy Court shall have entered the Sale Order, which Sale Order shall include a finding that Buyer has purchased the Assets in "good faith" within the meaning of Bankruptcy Code Section 363(m) and shall be in form and substance reasonably acceptable to Buyer;

(ii)    No court order by the Bankruptcy Court shall have been entered in any action or proceeding instituted by any person that enjoins, restrains, or prohibits the consummation of the transactions contemplated hereby; and

(iii)    The Definitive Agreements shall have been executed, subject to Closing, in form reasonably acceptable to all parties thereto.

(b)    The obligations of Buyer under this Agreement are subject to the satisfaction, or waiver by Buyer, of the following further conditions precedent on or before Closing:

(i)    Seller shall, in all material respects, have performed all of its obligations and agreements and complied with all of its covenants contained in this Agreement and any other Definitive Agreements to be performed and complied with by it on or prior to Closing; and

(ii)    Seller shall have delivered to Buyer Seller's deliverables set forth in Section 2.3.

(c)    Seller's obligations under this Agreement are subject to the satisfaction, or waiver by Seller, of the following further conditions precedent on or before Closing:

(i)    Buyer's representations and warranties contained herein shall be true in all material respects on and as of Closing;

(ii)    Buyer shall, in all material respects, have performed all of its obligations and agreements and complied with all of its covenants contained in this Agreement to be performed and complied with by it on or prior to Closing; and

(iii)    Buyer shall have delivered to Seller Buyer's deliverables set forth in Section 2.4.

2.3    <u>Seller's Deliverables</u>. At or prior to Closing, Seller shall deliver to Buyer the following:

(a)    A bill of sale; and

(b)    Other instruments of transfer reasonably required by Buyer to evidence the Assets' transfer to Buyer, including, without limitation, (i) assignments with respect to

any material intellectual property registered, recorded or filed with any governmental authority, in form suitable for registration, recordation or filing with such governmental authority, in each case duly executed by Seller and (ii) written notification to the FDA of the transfer of any 510(k) clearances composing part of the Assets to the Buyer. The parties hereto hereby agree to cooperate with one another in good faith, to use commercially reasonable efforts to execute and deliver all documents reasonably requested by Buyer to evidence the Assets' transfer to Buyer, and to take all administrative actions reasonably requested by Buyer to effectuate the sale of the Assets and the Closing; provided that if any requested administrative action would result in the Seller incurring third party expenses, then Buyer shall fund such expenses prior to Seller taking such administrative actions.

2.4    Buyer's Deliverables. At Closing, Buyer shall deliver to Seller any instruments reasonably required by Seller to (a) evidence the Assets' transfer to Buyer; (b) certify Buyer's approval and authorization of its execution of this Agreement and the transactions contemplated hereby and the taking of any and all actions deemed necessary or advisable to consummate the transactions contemplated herein; and (c) certify Buyer's compliance with Sections 2.2(c)(i), 2.2(c)(ii) and 2.2(c)(iii).

### ARTICLE 3
### BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer represents and warrants to Seller as follows:

3.1    Organization. Buyer is a corporation duly organized and validly existing under the laws of the State of Delaware.

3.2    Authority. Buyer has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. Prior to Closing, the execution, delivery and performance of this Agreement will have been duly and validly authorized and ratified by all necessary corporate and other action on the part of Buyer and no other proceedings on the part of Buyer are necessary to authorize this Agreement and the transactions contemplated hereby.

3.3    Validity. Assuming Buyer's and Seller's due authorization, execution and delivery of this Agreement, and assuming Bankruptcy Court approval and authorization, this Agreement constitutes Buyer's binding obligation, enforceable in accordance with its terms.

3.4    Litigation. There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to Buyer's knowledge, threatened), at law or in equity, that might affect Buyer's ability to close the transactions contemplated hereby.

3.5    Disclaimer. Buyer acknowledges that in making the decision to enter into this Agreement and to consummate the transactions contemplated hereby, Buyer has relied solely on the basis of its own independent investigation of the Business and the Assets and upon express written representations, warranties and covenants in this Agreement. Buyer acknowledges that (a) it has not relied, in whole or in part, on any information contained in documents, materials or other information provided to it by, or on behalf of, Seller, and (b) Seller is not making any representations or warranties with respect to (i) any such documents, materials or other

7

information, or (ii) the Assets' value, condition, merchantability, marketability, profitability, suitability or fitness for a particular use or purpose. Buyer has inspected and is familiar with the physical condition of the Assets and has conducted a full and complete inspection of Seller's business to their complete satisfaction. Buyer acknowledges that it is purchasing the Assets based on its own judgment, and does not rely on the representations of anyone as to the condition of the Assets and shall accept the same "AS IS", "WHERE IS", "WITH ALL FAULTS", in the condition they are in as of the date hereof and the Closing Date.

## ARTICLE 4
## TAX MATTERS

4.1     <u>Certain Taxes Other Than Federal, State and Local Income Taxes</u>. All transfer, documentary, sales, use, stamp, registration and other such taxes and fees (including penalties and interest) incurred in connection with this Agreement and arising out of the Assets' transfer to Buyer, but excluding Seller's income taxes, shall be paid by Buyer when due, and Buyer shall, at its own expense, file all necessary tax returns and other documentation regarding such taxes and fees, and, if required by applicable law, Seller shall join in the execution of any such tax returns and other documentation. The parties shall cooperate with one another in the preparation of all tax returns, questionnaires, applications or other documents regarding any taxes or transfer, recording, registration or other fees which become payable in connection with the transactions that are required to be filed on or before Closing.

4.2     <u>Preparation and Filing of Certain Tax Forms</u>.  The Purchase Price shall be allocated among the Assets as provided in a schedule mutually prepared by Buyer and Seller (the "<u>Allocation</u>") prior to Closing for purposes of complying with the requirements of Section 1060 of the Internal Revenue Code of 1986, as amended (the "<u>Tax Code</u>"), and regulations thereunder. Buyer and Seller agree to use such Allocation in filing all required forms under Section 1060 of the Tax Code and not to take any position inconsistent with such Allocation upon any examination of any such tax return, in any refund claim or in any tax litigation. In addition, (i) neither Seller nor Buyer make any admission or agreement that such Allocation in any way establishes, determines or represents the actual value or appraisal of any of the Debtor or the Assets and (ii) the Allocation shall not be binding upon, nor shall it express or imply any agreement, conclusion or determination of value by or among, any secured or unsecured creditor of Debtor.

## ARTICLE 5
## COVENANTS

5.1     <u>Assignment of Contracts and Claims</u>. Notwithstanding any other provision of this Agreement, nothing in this Agreement or any related document shall be construed as an attempt to assign (a) any contract which, as a matter of law or by its terms, is nonassignable without the consent of the other parties thereto unless such consent has been given or unless such consent is not required by the Bankruptcy Code or (b) any contract or claim as to which all of the remedies for the enforcement thereof enjoyed by Seller would not, as a matter of law or by their terms, pass to Buyer as an incident of the transfers and assignments to be made under this Agreement. Nothing in this Section shall relieve (a) Seller of its obligations to obtain any consents or make

any cure payments required for the transfer of the Assets and all rights thereunder to Buyer or (b) Buyer of its obligations to pay the cure costs paid by Seller.

5.2     Conveyance of Assets. At Closing and as set forth in and in accordance with Section 2.3(b), Seller shall use its reasonable commercial efforts to execute any deeds, bills of sale, instruments of conveyance, assignments, assurances or any other actions or things as are reasonably necessary to transfer, vest, perfect or confirm right, title, interest or ownership (of record or otherwise) of the Assets as requested by Buyer. If at any time after Closing until the latter of (a) the date that is two months after the Closing Date or (b) the earlier of (i) the discharge of the Seller as trustee or (ii) the date that is six months after the Closing Date, Buyer is advised that any additional deeds, bills of sale, instruments of conveyance, assignments, assurances or any other actions or things are reasonably necessary to vest, perfect or confirm Buyer's ownership (of record or otherwise), right, title or interest in, to or under any or all of the Assets or otherwise to carry out the intent of this Agreement, Seller shall use its commercially reasonable efforts to execute and deliver all deeds, bills of sale, instruments of conveyance, assignments and assurances and take and do all such other actions and things as may be reasonably requested by Buyer in order to vest, perfect or confirm any and all right, title and interest in, to and under such rights, properties or assets in Buyer (including with respect to any intellectual property) or otherwise to carry out this Agreement; provided, that all such measures taken by Seller shall be at Buyer's sole cost and expense.

5.3     Bankruptcy Actions. This Agreement is subject to Bankruptcy Court approval. Buyer agrees to cooperate with Seller in connection with furnishing information pertaining to the satisfaction of the requirement of adequate assurances of future performance of the Assumed Contracts as required under Bankruptcy Code Section 365. Seller shall be responsible for preparing all pleadings and other documents required to be filed with the Bankruptcy Court in connection with its approval of the Definitive Agreements and the Sale, which pleadings and other documents shall be in form and substance acceptable to Buyer and provided to Buyer prior to their filing with the Bankruptcy Court.

5.4     Exclusivity; No Overbidding. During the period beginning on the date hereof and continuing through the Closing Date or until this Agreement is terminated in accordance with Article 6, Seller shall suspend the bankruptcy auction process and not permit overbidding or entertain Competing Offers (such period, the "Standstill Period"). Without limiting the generality of the foregoing, during the Standstill Period Seller shall not (a) solicit, initiate, or encourage the submission of any proposal, bid or offer from any person relating to the acquisition of any capital stock or other voting securities, or any Assets (including any acquisition structured as a merger, consolidation, or share exchange) or (b) participate in any discussions or negotiations regarding, furnish any information with respect to, assist or participate in, or facilitate in any other manner any effort or attempt by any person to do or seek any of the foregoing. Seller shall notify Buyer immediately if any person makes any proposal, bid, offer, inquiry, or contact with respect to any of the foregoing. Seller agrees that any breach of this Section 5.4 shall constitute a material breach for purposes of Section 1.3(d)(i)(C). In the event of such a breach, or if the Bankruptcy Court approves a Competing Offer, Seller shall (i) disburse to Buyer the Escrow Funds in accordance with Section 1.3(d)(i)(C), (ii) pay to Buyer an amount equal to the Due Diligence/Standstill Fee, and (iii) reimburse Buyer for Buyer's actual and documented costs and expenses, including legal fees, incurred in connection with the due diligence and the transactions

contemplated hereby (such reimbursement of costs and expenses not to exceed ninety thousand dollars ($90,000)), all as the sole and exclusive remedy of the Buyer in the event of a breach of this Section 5.4. Notwithstanding the foregoing, nothing herein shall limit or prohibit Seller, or its advisors, from discussing the transactions contemplated hereby with Dirk Muller so long as such discussions do not solicit or encourage the submission of any proposal or offer.

5.5    Maintenance of Assets.  Seller will not take any action and will not cause the Debtor or the German Subsidiary to take any action that would adversely affect the Assets; provided, however, in no event shall any action taken by Seller, Debtor, or the German Subsidiary at the direction of Buyer pursuant to this Agreement be deemed for purposes of this Agreement to be an action which adversely affects the Assets taken by Seller, Debtor, or the German Subsidiary. Seller will not take any action, or cause any action to be taken, that would adversely affect the operations or prospects of the German Subsidiary, and Seller will not distribute, and will not cause the distribution of, any cash or assets from the German Subsidiary to the Debtor. In no circumstances shall Seller or the Estate be required to advance sums in excess of $25,000 to the German Subsidiary in order to support its continued operations, provided, however, at the request of Buyer and upon Buyer's payment in advance to Seller, Seller shall advance such additional sums (i.e., additional to the aforementioned $25,000), not to exceed ten thousand dollars ($10,000), to the German Subsidiary, which sums are reasonable and necessary to prevent the immediate insolvency of the German Subsidiary. The Parties have mutually developed the plan of action on maintenance and prosecution of pending and issued patents as set forth on Schedule 5.5. Seller agrees to fund up to $20,000 of the cost and expenses incurred in connection with such plan out of the Estate. To the extent that the costs and expenses associated with the maintenance and prosecution of pending and issued patents pursuant to the mutually developed plan exceed $20,000 at any time prior to the Closing Date, Buyer shall pay all such costs and fees in excess of $20,000 that are necessary to implement the plan.  The parties shall complete the development of the plan on or before execution of this Agreement. Any additional amounts paid by Buyer pursuant to this paragraph shall not constitute a credit towards any other amounts due pursuant to this Agreement or the other Definitive Agreements. Except as expressly set forth in this Agreement or any other Definitive Agreement neither Seller or the Estate shall be required to expend any funds, incur any cost or take any action in connection with  the preservation of the Assets or the German Subsidiary. Seller will promptly disclose to Buyer any customer complaints received by Seller and shall notify the FDA as and if required by FDA rules and regulations.

5.6    Access.  Seller or its advisors will provide, at Buyer's sole cost and expense, information reasonably requested by Buyer as soon as practicable under the circumstances to the extent that such information is available to Seller. At Buyer's sole cost and expense, Seller will provide Buyer with reasonable access to Debtor's books and records, including its computer systems to the extent permitted by applicable law. Buyer understands that all financial, patient, physician, regulatory and other records are stored on Debtor's servers. Seller shall grant Buyer reasonable access to such servers at Buyer's sole cost and expense. This Section 5.6 shall become effective upon receipt  by Seller of the Down Payment. Buyer expressly agrees that a representative of Seller shall facilitate access to information pursuant to this Section 5.6 and shall be present at all times during Buyer's physical presence at any location of Debtor or Debtor's books and records. Buyer shall negotiate an agreement with Seller's representative regarding costs and expenses for such visits, all of which shall be borne by Buyer; provided, however,

Buyer's failure to successfully negotiate such an agreement shall not be deemed a breach of this Section 5.6 by Seller.

# ARTICLE 6
# TERMINATION

6.1    Termination. This Agreement may be terminated at any time prior to the Closing Date:

(a)    By Buyer's and Seller's mutual written consent;

(b)    By Buyer if Seller fails to perform, in any material respect, any of its covenants, agreements, or obligations under this Agreement, and any such failure is not cured within 15 days after written notice from Buyer;

(c)    Automatically, and without further action or notice by either party or Bankruptcy Court approval, if the Bankruptcy Court shall enter an order approving a Competing Offer; or

(d)    By Seller if Buyer breaches any of its representations or warranties in any material respect herein or fails to perform, in any material respect, any of its covenants, agreements, or obligations under this Agreement, and any such breach or failure is not cured within 15 days after written notice from Seller (provided, however, that such cure period shall not apply with respect to Buyer's payment obligations set forth in Sections 1.3(b) and 1.3(c) of this Agreement).

6.2    Effect of Termination. In the event of this Agreement's termination by either Seller or Buyer as provided in Section 6.1, this Agreement shall forthwith become void and have no effect, without any liability or obligation on the part of Seller or Buyer, except (a) to the extent that such termination results from the breach by a party of any of its representations, warranties, covenants or agreements set forth in this Agreement as contemplated by Sections 6.1(b) and 6.1(d) or (b) to the extent the Bankruptcy Court orders the enforcement of this Agreement on its terms in the event Buyer fails to close at Closing once the Bankruptcy Court has approved this Agreement and the transactions contemplated hereby pursuant to the Sale Order.  In the event of this Agreement's termination in accordance with Section 6.1(b), Seller shall, in addition to any other obligation of this Agreement to be performed on or after termination, promptly return to Buyer the Escrow Funds and make the other payments provided for in Section 5.4.  In the event of this Agreement's termination in accordance with Section 6.1(d), Seller shall disburse the Escrow Funds to the Estate, and Buyer shall perform its obligations pursuant to this Agreement which are to be performed on or after termination. In the event of this Agreement's termination automatically in accordance with Section 6.1(c), Seller shall promptly return to Buyer the Escrow Funds and make the other payments provided for in Section 5.4. The remedies set forth in this Section 6.2 are the sole and exclusive remedies of the parties hereto, except nothing in this Agreement shall in any way limit Seller's or Buyer's  rights and remedies to seek specific performance if the Closing does not occur because Buyer or Seller,

as the case may be, breaches its covenants, agreements, or obligations under this Agreement in any material respect.

## ARTICLE 7
## GENERAL

7.1     Assignment. This Agreement and the parties' rights hereunder may not be assigned (except by operation of law and as otherwise provided in this Section 7.1) and shall be binding upon and shall inure to the benefit of the parties and their respective successors and permitted assigns. Notwithstanding the foregoing, Buyer may (i) assign any or all of its rights and interests hereunder to one or more of its affiliates or another designee, (ii) designate one or more of its affiliates or another designee to perform its obligations hereunder (in any or all of which cases Buyer nonetheless shall remain responsible for the performance of all of its obligations hereunder), and (iii) collaterally assign any or all of its rights and interests hereunder to one or more lenders of Buyer.

7.2     Signatures. Signatures on this Agreement delivered by fax or telecopier shall be considered original signatures for purposes of effectiveness of this Agreement.

7.3     Counterparts. This Agreement may be executed simultaneously in two or more counterparts which may be delivered by facsimile, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

7.4     Fees and Expenses. Whether or not the transactions herein contemplated shall be consummated, (a) Seller will pay the fees, expenses and disbursements of Seller, and its agents, representatives, accountants and counsel incurred in connection with the subject matter of this Agreement and any amendments thereto, and (b) Buyer will pay the fees, expenses and disbursements of Buyer and its agents, representatives, accountants and counsel incurred in connection with the subject matter of this Agreement and any amendments hereto.

7.5     Counsel. Each party hereto warrants and represents that such party has been afforded the opportunity to be represented by counsel of its choice in connection with the execution of this Agreement and has had ample opportunity to read, review and understand the provisions of this Agreement.

7.6     Notices. Any notice or communication required or permitted hereunder shall be sufficiently given if sent by first class mail, postage prepaid:

If to Seller, addressed to Seller at:

> Michael R. Bakst, Esquire
> Ruden McClosky
> 222 Lakeview Avenue, Suite 800
> West Palm Beach, Florida 33401
> Fax: (561) 514-3423

With a copy to his counsel at:

Skip Miller, Esquire
Ruden McClosky
222 Lakeview Avenue, Suite 800
West Palm Beach, Florida 33401
Fax: (561) 514-3423

With a copy to:

Kevin J. Simard, Esquire
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts  02108
Fax: (617) 692-3431

If to Buyer, addressed to it at:

Kenneth T.Coviello
Vycor Medical, Inc.
80 Orville Drive
Bohemia, New York 11716
Fax: (631) 244 1436

With a copy to its counsel at:

Louis A. Bevilacqua, Esq.
Pillsbury Winthrop Shaw Pittman LLP
2300 N St. NW
Washington, DC 20037
Fax: (202) 663-8007

7.7    <u>Opportunity to Investigate</u>. All of the parties have had an opportunity to investigate and evaluate the Assets being purchased, have relied on independent professional advice and, therefore, agree that the price to be paid by Buyer for the Assets is reasonably equivalent value for the Assets.

7.8    <u>Governing Law and Jurisdiction</u>. THIS AGREEMENT (AND ALL DOCUMENTS, INSTRUMENTS, AND AGREEMENTS EXECUTED AND DELIVERED PURSUANT TO THE TERMS AND PROVISIONS HEREOF (SUCH DOCUMENTS, THE "ANCILLARY DOCUMENTS")) SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE BANKRUPTCY CODE AND TO THE EXTENT NOT INCONSISTENT WITH THE BANKRUPTCY CODE, THE INTERNAL LAWS OF THE STATE OF FLORIDA WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAW THEREOF. BUYER AND SELLER FURTHER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (A) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT AND (B)

13

THE ACQUIRED ASSETS AND THE ASSUMED LIABILITIES. BUYER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION; PROVIDED, HOWEVER, THAT IF THE BANKRUPTCY COURT REFUSES TO ACCEPT JURISDICTION OVER ANY SUCH DISPUTE, THEN ANY STATE OR FEDERAL COURT LOCATED IN THE COUNTY OF PALM BEACH, STATE OF FLORIDA SHALL HAVE JURISDICTION OVER SUCH DISPUTE AND BUYER AND SELLER HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT IN ANY SUCH CASE.

7.9    Conflicts. In case any provision in this Agreement shall conflict with any part of the Sale Order, the terms of the Sale Order shall control and shall be given precedence by the parties hereto over any such conflicting term in this Agreement.

7.10    Captions. The captions in this Agreement are for convenience only and shall not be considered a part hereof or affect the construction or interpretation of any provisions of this Agreement.

7.11    Entire Agreement. This Agreement and the documents delivered pursuant hereto constitute the entire agreement and understanding between Seller and Buyer and supersede any prior agreement and understanding relating to this Agreement's subject matter. This Agreement may be modified or amended only by a written instrument executed by Seller and Buyer acting through their duly elected or appointed officers.

[REMAINDER OF PAGE LEFT BLANK; SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the day and year first above written.

**SELLER:**

_____
Michael R. Bakst, as
Chapter 7 Trustee for Debtor,
Novavision, Inc.
and not individually

**BUYER:**

VYCOR MEDICAL, INC.

By:      _____
Name:   David Marc Cantor
Title:    President


Oxford Finance Corporation, as agent for itself and ATEL Ventures, Inc. approves the transactions set forth in and contemplated by this Agreement.

OXFORD FINANCE CORPORATION
As Agent for itself and ATEL Ventures, Inc.

By:      _____
Name:   _____
Title:   _____

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

**SELLER:**

_____

Michael R. Bakst, as
Chapter 7 Trustee for Debtor,
Novavision, Inc.
and not individually

**BUYER:**

_____

David Marc Cantor
President
VYCOR MEDICAL, INC.

Oxford Finance Corporation, as agent for itself and ATEL Ventures, Inc. approves the transactions set forth in and contemplated by this Agreement.

OXFORD FINANCE CORPORATION
As Agent for itself and ATEL Ventures, Inc.

By:      _____
Name:  _____
Title:    _____

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

**SELLER:**

_____

Michael R. Bakst, as
Chapter 7 Trustee for Debtor,
Novavision, Inc.
and not individually

**BUYER:**

VYCOR MEDICAL, INC.

By: _____
Name: _____
Title: _____

Oxford Finance Corporation, as agent for itself and ATEL Ventures, Inc. approves the transactions set forth in and contemplated by this Agreement.

OXFORD FINANCE CORPORATION
As Agent for itself and ATEL Ventures, Inc.

By: _____
Name: _____HANS HOUSER_____
Title: _____SVP & CHIEF CREDIT OFFICER_____

NovaVision Asset Purchase Agreement

## Schedule 1.1

### Assets

(a) all intellectual property, including without limitation the items listed on <u>Annex A</u> (Patents and Patent Applications) hereto, as well as all issued and pending patents, trademarks, service marks, copyrights, domain names, corporate names, logos and other marketing and branding indicia and other intellectual property,

(b) personal property, including all equipment and furnishings,

(c) inventory,

(d) accounts receivables,

(e) agreements and rights thereunder, including rights to ongoing sales and patient base,

(f) securities (including the stock of NovaVision AG;  and for the avoidance of doubt, the parties to this Agreement agree and acknowledge that all the assets and liabilities of NovaVision AG shall remain as the assets and liabilities of NovaVision AG, including, without limitation, cash held by NovaVision AG, notwithstanding the transactions to be consummated pursuant to the terms of this Agreement),

(g) claims,

(h) deposits (other than any deposits or payments made in accordance with this transaction), rebates, prepayments, and refunds,

(i) causes of action and rights of set off (other than any cause of action under Chapter 5 of the Bankruptcy Code or any causes of action against the former officers, directors and employees of the Debtor),

(j) permits and licenses (including regulatory approvals such as 510(k) license and CE Mark for VRT device and FDA license as a medical device manufacturer, as well as any work towards submission of other licenses), and

(k) electronic and other books, records, files, financial records, physician records, patient records, clinical and other studies and other customer lists.

**Annex A to Schedule 1.1**

## PATENTS AND PATENT APPLICATIONS

**U.S. Patents**
6,464,356
7,367,671
7,594,728
7,642,990
7,682,021
7,748,846
7,753,524
7,753,526

**U.S. Patent Applications (Publication Number)**
11/394,154 (2007/0038142)
11/771,293 (2008/0013047)
11/782,379 (2008/0077437)
11/881,152 (2008/0024725)
12/017,919 (2008/0177352)
12/691,208 (2010/0118264)
12/883,418
12/883,423
12/903,517
29/351,087
29/351,089
29/351,090

**Foreign Patents**
EP 1 107 721

**Foreign Patent Applications**

*Australia*
2002238539
2006230433
2007226838
2007269234
2007277139
93480/98

*Canada*
2341695
2475042
2603583
2646080

2655438
2657762

**China**
98814262
200680011013.2
028027950

**EP**
98946446.6
02704697.8
06748980.7
06845592.2
07710418.0
07710436.2
07759016.4
07810821.4
07840321.9
08728049.1

**Hong Kong**
02101690.9
05102470.0
08104814.8

**India**
1967/CHEN/2004
4318/CHENP/2007

**Japan**
2000-567166
2003-565390
2007-120850
2008-504402
2008-553473
2008-553482
2009-501715
2009518577
2009-521841

**PCT**
PCT/EP98/05505
PCT/EP02/01339

**Schedule 1.4**

**Allocation of Proceeds**

## Schedule 1.5

**Assigned Contracts**

None.

**Schedule 1.7**

**Excluded Liabilities**

**Schedule 5.5**

**Plan of Action on Maintenance and Prosecution of Pending and Issued Patents**

A. <u>Mandatory Maintenance Items</u>: Seller shall use its commercially reasonable efforts to have each of the items set forth below attended to and implemented pursuant to and in accordance with Section 5.5 of this Agreement:

1. Canadian Patent No. 2,341,695 - Renewal fee and associated late payment fee(s).

2. Canadian Patent No. 2,475,042 - Grant fee and associated late payment fee(s).

3. German Patent No. 69840710.5 - Annuity payment and associated late payment fee(s).

4. French Patent No. EPFR1107721 - Annuity payment and associated late payment fee(s).

5. Great Britain Patent No. EP1107721 - Annuity payment and associated late payment fee(s).

B. <u>Docketed Matters</u>.  Attached hereto is a docket setting forth the schedule with respect to the maintenance and prosecution of pending and issued Debtor patents in the United States and Europe.  Seller, upon the prior written request of Buyer shall use its commercially reasonable efforts to have such docketed items attended to and implemented pursuant to and in accordance with Section 5.5 of this Agreement.

C. <u>Notifications Received Regarding Pending and Issued Patents (the "Patent Notifications")</u>.

(i) To the extent the Seller or Debtor receives any Patent Notifications regarding any pending and/or issued Debtor patents, Seller shall cause such Patent Notifications to be provided to Buyer.

(ii)  Upon receipt of such Patent Notifications, Buyer shall have five business days during which to notify Seller in writing of its election to require Seller to use its commercially reasonable efforts to attend to and to implement the subject matter of any such Patent Notification pursuant to and in accordance with Section 5.5 of this Agreement.  If Buyer fails to so notify Seller within such five-business-day period with respect to a Patent Notification, then Seller shall be under no obligation to attend to or implement the subject matter of such Patent Notification for purposes of Section 5.5 of this Agreement (but Seller may nevertheless determine to attend to and implement the same).

All obligations of Seller pursuant to this Schedule 5.5 shall terminate as of the Closing.